May it please the Court. My name is Matt Gallinger, and I represent American Reliable Insurance Company. Counsel, could you give me just one minute? Sure. I'm all set. You ready? Okay. The district court was correct in most regards when it determined that Lawrence Lockard, who pled guilty to sexually assaulting Ms. Nelson, that there was no coverage under the American Reliable Insurance Company. Mr. Gallinger, will you just slow down, please? Sure. Reading to us quickly is not the best way to get your thoughts across. Okay. Okay. Okay. The district court was incorrect when it found coverage under the policy for the claim where Mr. Lockard instructed his friend, Mr. Wayne Fredenberg, to spread false statements that the sexual assault between Ms. Nelson and Mr. Lockard was consensual at an American Fishing Society meeting. The district court committed error in two regards. First, the district court should have applied the sexual molestation, corporal punishment, or physical or mental abuse exclusion, which unequivocally— Did you argue that in your opening brief? We did, Your Honor. Where? I believe we argued that the— I know you argued it in the district court on the motion of summary judgment, but the question is, did you press that issue in your brief sufficiently to not have waived or forfeited the argument? Yes, Your Honor. Your Honor, if you look at our opening brief, the first statement of issues presented was, did the district court err when it declined to consider and apply American sexual molestation, corporal punishment, or physical or mental abuse exclusion to deny coverage? Yeah, but that's coverage for—just to be very clear, that's the claim about the colleague making the statements at the conference? Yes, ma'am. As opposed to the fifth claim, the other one we're going to talk about, on the cross-appeal, which is for the sexual conduct itself. Yes. So that was raised in to exclude coverage with regards to the statements where Mr. Lockhart instructed his friend Wade to spread false statements that the sexual assault was consensual at American Fishing Society. You took a position as to the first five claims that if there wasn't coverage, there's no reason to claim exclusion. Correct, Your Honor. And then as to the one that was coverage, you did claim exclusion on the basis that first there has to be coverage before you can claim exclusion. That is correct, Your Honor. First there must be coverage. I've got you. Right, so I appreciate your argument on exclusion regarding the statements to the colleague to tell the people at the conference that this was consensual. I'm going to talk about that first. Okay. But we go first to coverage on that, right? And so the district court made a finding that there wasn't an intention to harm or to damage, but those were still her colleagues, weren't they? They were, Your Honor. And we also did raise that, and that's our second half of our brief, so I'll just switch it. The district court determined that there was coverage because Mr. Lockhart did not objectively intend to harm Mrs. Nelson. We disagree with that based upon the record. Clearly, he did intend to, or our position is he objectively intended to commit harm when he blamed the victim and said it was consensual, it wasn't his fault. When he asked Frydenberg to call her a liar, that might hurt her. Yes, and under Montana law, Fisher is very clear that an intentional act can be covered if, one, it's intentional. Well, we obviously have that here. Two is where the district court made the error was, the Montana Supreme Court goes on to further say that you must objectively determine that he did not intend to commit harm. Well, of course he admitted to committing harm here. He had his friend tell colleagues of Mrs. Nelson that she was a liar, that she consented to the sexual assault, and more or less blamed the victim. So on that part of the argument, Your Honor, is we agree that the district court, based upon the record, was incorrect when it determined that Mr. Lockhart did not intend, objectively did not intend to commit harm. So if we agree with you there, on this point, there's no coverage and we don't get to your exclusion. That is correct, Your Honor. If the court agrees that Mr. Lockhart objectively intended harm, then there is no coverage under Montana law, and therefore the exclusion is irrelevant to the determination of the case. If the court would agree with the district court, which we submit is incorrect, that he didn't objectively intend harm when he had his friend... Then your exclusion comes in. I'm sorry, Your Honor, I didn't hear you. If we agree with the district court that he didn't intend objectively to harm her by telling Friedenberg to call her a liar, then you still claim the exclusion. Yes, the exclusion... The exclusion arises from sexual molestation. Yes, so then the exclusion would, as the court has explained, if there is a determination of coverage, our position would be now the exclusion applies to exclude the coverage. Right, but what about the other, what about the conduct, the conduct itself and the cross-appeal? Okay, so on the cross-appeal, the district court was correct when it determined that there's no coverage for a sexual assault. Strecker is right on point in Montana law. Wait, wait, wait, I do not agree that Strecker is right on point. So let's back up. We have a finding, a factual finding here from the district court that Lockhart did not intend, he thought that he had consent until she jumped up. That's a factual finding? That is a factual finding. And then the unintended consequence? I mean, I don't know how we get around Fisher. The rule in Montana is even intentional conduct can be an occurrence, an accidental occurrence if the consequences are unexpected or unintended. I am paraphrasing to be sure, but why doesn't that fit this exactly? Okay, first he pled guilty. He pled guilty to an offense that only required that he knew he was engaging in the conduct, not that there's an element that he knew he didn't have consent. He pled guilty to a very special type of sexual assault that did not require that he knew that she lacked consent. Yeah, but Mr. Lockhart testified in the trial, he testified he knew he didn't have consent. Well, in context, what he said is he realized that after she jumped up. Yes. And more importantly, we're only appellate court judges, and so the judge close to the action made that factual finding, and I think we are. Unless you're going to convince me that it's clearly erroneous, I think we are bound by that. I would submit it is clearly erroneous given Mr. Lockhart knew that she was drinking. Yep. He knew she was on sleep medication. He knew that she went to sleep. He interpreted, according to the record, because she gave him a long hug and a kiss that she wanted sexual advances. He waits until she goes to sleep. He intentionally, which he testifies to, gets out of his bed, walks over. He doesn't deny engaging in the conduct, for sure. Exactly, which I think makes it erroneous that he somehow believed he had consent. I mean, you have a lady. But the judge found otherwise. And I understand that, and I disagree with the district court on that, given the facts of this case. Okay. If it strikes me, I just want to give you absolutely every chance to respond to this. It strikes me on this claim, she's got a very strong argument that under Montana law, that this was an occurrence. And I would respectfully disagree, because under Montana law, Strecker, I know you disagree somewhat, but Strecker says that sexual assault is not accident. Okay, so let's talk about Strecker, because that's your first point, and I want to go through all these. Strecker, I think, is the one that arises where an individual admitted to sexually assaulting his stepdaughter for years and years on end, isn't it? That is correct. And the Montana Supreme Court, unsurprisingly, had very little tolerance for listening to him talk about whether this was an accident or an occurrence, right? In that context. That is correct. Okay. So that's why I set Strecker aside, because it seems to me to be wholly, entirely different, particularly because we have this finding from the trial court here that Mr. Lockhart believed, erroneously to be sure, but believed he had consent. So that's why Strecker doesn't get me very far. Do you want to respond to that? Yes, because the point I would make about Strecker is the Supreme Court was very clear when it said you don't look at the subject intent of the bad actor. I mean, of course he's going to claim he didn't commit harm. Of course he's going to claim he has consent. And that's also been referenced in Fisher. Right, but your problem on this score is that you're relying on, you know, sexual assault is sexual assault. You say that repeatedly in your briefing, and it is uncharacteristic for me to be looking askance at that, except I'm bound by this statute of conviction that did not require that he, Mr. Lockhart, intended anything other than to engage in the sexual conduct. That's all he pled guilty to. Yes, but I think the record of what he testified to was very clear, where he intentionally says he doesn't have consent, and then when specifically asked, did you sexually assault and molest Ms. Nelson, he says yes. He says that he recognized in context afterwards that he didn't have consent and he was horrified, but he doesn't say that he knew that at the time before he engaged in the conduct, does he? Or if so, I'm inviting you to tell me where he said that in the record, sir. I think he says it both ways, so I think you could interpret that both ways, and that's on page. Thank you. Yeah, Mr. Lockhart admitted they intentionally sexually assaulted and molested Ms. Nelson. That's on page 55. Also on page 55, Mr. Lockhart knew they did not have consent to touch her when directly asked. Again, though, his subjective intent of I think I had consent doesn't apply under Montana law because Strecker says it doesn't. Just because you say, oh, I thought I had consent, of course he's going to say he thought he had consent, and that's why in Strecker the Montana Supreme Court said. It's not just that he said he had consent. It's that there is a legal consequence to the trial court making the finding. And I understand that, and that's where we disagree based upon the record. Fair enough. You're taking the position that the finding by the trial court was clearly erroneous. It was, Your Honor, because of all the factors, and I'm sorry if I didn't get to that quickly enough. You have, and I don't mean to belabor it. Thank you. That's fine. And then I guess real quickly on the second cross appeal claim about the statements where Mr. Lockhart informed Ms. Nelson after the sexual assault they were walking out of the Glacier National Park. One, again, he admitted that he made the statements. Two, Mr. Lockhart actually admitted that Ms. Nelson would suffer emotional distress upon hearing these statements, and Ms. Nelson also testified that the comments done to her, or she thought that those comments were done to her to hurt her. Therefore, again, it's an intentional act. The district court was correct when it determined that on that occasion Mr. Lockhart intended and expected harm. I'll reserve the rest of my time. Thank you. Good morning. Good morning. May it please the Court, my name is Terry McDonald. I represent Karen Nelson in this matter, along with co-counsel Sadie Johnston. I will be handling the portion of the argument defending our cross appeal. Sadie will be handling the portion and arguing opposition to the carrier's appeal. Nowhere does it say in Montana, out of the Supreme Court decisions, that a single act of sexual assault can't be negligent. It doesn't say it. Strecker doesn't say that. What Strecker says is that a series of molestations over years by their nature cannot be negligent. The other side of that. Is there any Montana case that says that sexual assault can be negligent? No. No. That would help you. Yes, that would help. And that's why these things are fact specific. It is an uncontested fact in this case that Mr. Lockhart thought he had consent until Karen jumped out of bed. And he made a mistake. He did something very stupid. And that's why we have insurance to cover such incidents when we do something stupid and make mistakes. You could take, for example, well, the drunk driver. The drunk driver intentionally drinks, intentionally gets behind the wheel of a car. He may have thought that at one time. But did he still keep thinking that he had consent when he stated that on ER 55 that he knew he didn't have consent? After he realized when she jumped out of bed was the first time it became a sexual assault because he knew he didn't have consent. He thought he had consent up until the time, and he never touched her thereafter. And he changed his plea and he apologized. He changed his plea to a criminal charge and apologized and recognized that he had satisfied the elements of the criminal offense. Yes. And that's when he acknowledged. That's why if the question is asked, did you commit a sexual assault, he answered yes. Did you have consent? He answers no. It's because he knows that now. But at the time, he thought he did. And that is an uncontested factual finding. Wouldn't that have been a defense to his criminal action? I thought I had consent when I touched her. I didn't touch her after she indicated to me that I didn't have consent. That seemed to me to be a pretty good defense. You're probably right, Your Honor. But he didn't choose that. He chose to plead guilty and say, I knew I didn't have consent. He knew because he believed Karen. No, he did not plead guilty to not having consent. Right. That criminal charge, we have authority, subject to en banc activity, so we'll see what happens in the Price case, that his knowledge of her consent is not an element. Right. What he has to do is, under our current Ninth Circuit law, he has to knowingly engage in the sexual conduct. And what we have said is that his knowledge, her lack of consent, is not an element. At least that's where it stood as of the day he entered his change of plea. I'm really wanting either one of you to correct me if I'm wrong about that. But that is my understanding of the law at that time. You're correct, Your Honor. Are you aware of the Price case, of the en banc activity in the Price case? Okay. Your Honor, and what I find very significant is that that argument did not work at all with the district court because it's not even mentioned in the findings and conclusions. And that's why. Because he didn't realize he had committed a sexual assault until after she jumped out of bed. May I ask a question? Is knowingly engaging in sexual conduct, period, a crime in Montana? No. You think so? But knowingly engaging with someone who doesn't consent is a crime in Montana. Yes, Your Honor. Or in a subject, yes. Should be a crime anywhere. Yes. Right. He admitted to sexual assault only after he learned he actually didn't have consent. That's when she jumped out of bed. While he was in the act, he never believed sexual assault. He never believed he committed sexual assault. He believed he had consent. As mistaken as that was, he believed it. And he did not intend to harm her. It is key that in this case, when you talk about objectivity versus subjectivity, if he had known she was half asleep and if he thought, well, I'm going to do this anyway and when she wakes up she might be real happy with me, there, objectively, I could see where a judge could find that, in fact, it was a sexual assault because the court is in a position to decide objectivity versus subjectivity. Are you now speaking about the element of the federal offense? No, Your Honor. Okay. Because this is not an element of the federal offense he was convicted of. Now you're talking about Judge Christensen's finding in the civil case. Exactly. And what counsel argued with regard to subjective analysis versus objective. Okay. See, what our position is is that the subjectivity of it is the same as the objectivity because he thought he had consent, and that's an uncontested factual finding. It's only if he had believed that he knew he didn't have consent and he went along with it anyway, thinking that when she woke up she might be happy with him. I don't think that finding is totally unconsented if you paid attention to what your learned friend just said. He knew she'd been drinking, he knew she'd taken sleep medication. And that's why he was negligent, Your Honor. He made a mistake, and he was extremely stupid. No doubt about that. But he was negligent. It wasn't intentional. Your Honor, if you have no further questions, I think I'll pass the baton to Sadie to handle the opposition to their appeal. May it please the Court, Sadie Johnston on behalf of Karen Nelson. As the appellee, as Terry explained, I will be arguing in opposition to the appeal that was filed by American Reliable. Are you going to speak then about the statements made to the colleague? I'm just trying to keep up. Yes, so I'm going to be, yes, exactly, Your Honor. In their appeal, American alleged that the district court should have applied the sexual molestation, corporal punishment, physical or mental abuse exclusion to those statements. I think that based on how American briefed that first issue in their opening brief, that even if the court had applied that exclusion to the statements, that we would have ended up at the same result. And I say that because their argument in their opening brief is, one, that any damages that Karen incurred as a result of the instructions that Mr. Lockhart gave to his co-worker, Mr. Fredenberg, arose out of mental or emotional abuse. And I would say that that's not true. But the exclusion is quite a bit broader. If we get to the exclusion, the exclusion is very broad. I agree, Your Honor. But I just wish to point out and clarify for the court that how it was actually argued in the briefing was a little bit more of a narrow construction than how counsel orally argued today, just simply trying to make that clarification for the court. But I guess if we just start with coverage then, I would say under Fisher, this conduct was properly afforded coverage because he didn't expect or intend to injure Karen when he gave these instructions to Mr. Fredenberg. And I say that because at the time that he gave the instructions to his co-worker, his expectation and intent was to please let it be known at this American Fisheries Society meeting that, you know, what you're reading in the paper may not be the whole story, and that at the time that this incident happened, he did, in fact, believe that he had consent. What he was trying to portray to his co-workers, former co-workers and work associates, was, you know, I made a bad mistake here, but I wasn't trying to, for lack of a better word, be a creep. Now, Karen was undoubtedly damaged by his conduct. She testified at the hearing that, you know, after she found out that this had been told to people that are also her work associates. Discrediting Karen is not intending to harm her? I would say that it did, in fact, harm her, Your Honor. I agree with that. And his target audience was her professional colleagues. He had retired, but she hadn't retired. Right, but they were also people that he had longstanding, you know, work relationships with as well, people that he cared what they thought about him. What exactly was the testimony? What did he exactly say to tell them at the conference? That there was another side of the story. He wanted to have Friedenberg say that at the meeting. Yes, Your Honor. Not keep it to himself, but keep it safe. Right. There was, I believe, a few certain individuals that he wanted that word to get out to, and it was people that he had worked closely with previously. Didn't it include the statement that it was consensual? It was, I believe. I don't think it was limited to there's another side of the story. My understanding, correct me if I'm wrong, is that he also instructed the colleague to Friedenberg to say that it was consensual. And you're right, Your Honor. But I would say, you know, again, it gets back to the same argument that Terry was making, that he did believe he had consent at the time. The problem, though, is when he suggested, asked him to suggest that it was consensual, do you think he could then think that doesn't, he could somehow think that wouldn't harm her? I don't, you know, his testimony at the trial was that it was not, in fact, his intention to harm her when he made that. He just wanted it known to his employees. I can see how, in retrospect, he did acknowledge that he could see how that would be harmful. I can see standing here how it would be harmful, because I know it has harmed her. But at the time, I believe that his intention was, in fact, to have it be known to his co-workers that, you know, he thought he had consent. No, that he did have consent. Correct. If he had said he thought he had consent, that might be the fact. But that's not what he said, is it? No, you're correct, Your Honor. His contention was that he did, in fact, have consent. Yes. Yes, Your Honor. So having agreed with the district court, at least in our opinion, that they did properly afford coverage for this, even if you were to find, you know, there's not coverage, then you have to look at the exclusions. And again, when it was first briefed by American, they said, one, you know, this would fall under the exclusion because it arose from mental or emotional abuse, which is contrary to the court's finding that Karen was damaged as a result of the incident itself and Lockhart's conduct thereafter. And I don't think it has been disputed that the initial incident itself was, in fact, physical contact and not merely mental or emotional abuse. Second of all, American argues that there's no bodily injury. I think that also is contrary to the record. Karen testified that she has PTSD, along with physical manifestations of distress, including erasing heart anxiety, vomiting, difficulty concentrating, inability to sleep, you know, all of which I think would fit a reasonable insured's expectation of what would be covered under bodily injury. And, Your Honors, I would reserve the remaining time for rebuttal if you have no further questions of me at this time. Oh, yes, you're on the question. Okay. Thank you. Thank you. Just a few quick points. First of all, American rival disagrees that Mr. Lockhart did something stupid. What Mr. Lockhart did was a crime. What Mr. Lockhart did was he sexually assaulted Ms. Nelson. As far as it goes on, when he told Wade to tell Ms. Nelson's colleagues that it was consensual, I believe if you look at page 78 of the record, he knew he was pleading guilty at that time. So he knew he didn't have consent when he made that comment or when he instructed Wade to go tell her colleagues that she consented to the sexual assault. With regards to the exclusion, the sexual molestation exclusion, it's clear that the exclusion applies. I mean, we have an emotional and mental abuse exclusion. You know, you're going to have to use that mic or raise your voice. I'm sorry, Your Honor. Can you hear me okay? No. Okay. The exclusion is clear that it prevents any mental or emotional abuse of any kind committed by any person. And then under subsection 3, it also excludes sexual abuse, molestation, or sexual behavior of any kind committed by any person. Therefore, it's American Reliable's position that the exclusion would apply to Mr. Lockhart instructing Wade to inform Ms. Nelson's colleagues that the sexual assault was consensual. Is there any further questions? Thank you, Your Honor. Thank you very much. The case of American Reliable Insurance Company v. Lockhart is submitted. And, of course, thanks, counsel, for the argument. And we'll proceed. Take a break. You want to take a break? We'll take a 10-minute break. And we'll be back to take the last case on the calendar.
judges: Farris, Bea, Christen